## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| VG Liquidation, Inc., *et al.*, | ) | Case No. 18-11120 (JTD) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| THOMAS A. PITTA, Liquidating Trustee | ) | |
| of the VG Liquidating Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 22-50416 (JTD) |
| | ) | |
| ANDREW R. VARA, in his official | ) | |
| capacity as the United States Trustee | ) | |
| for Region 3; RAMONA D. ELLIOT, in | ) | |
| her official capacity as Acting Director of | ) | |
| The United States Trustee Program; and | ) | |
| THE UNITED STATES TRUSTEE | ) | |
| PROGRAM, | ) | |
| | ) | |
| Defendants. | ) | **Re:  D.I. Nos. 1 & 7** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Thomas A. Pitta, the Liquidating Trustee (the "**Plaintiff**") of the VG Liquidating

Trust (the "**Trust**") commenced this adversary proceeding seeking a refund of at least

$1,239,526.47 in excess statutory fees paid to the Office of the United States Trustee ("**UST**")

pursuant to a 2017 amendment to 28 U.S.C. § 1930(a)(6).  In 2022, the Supreme Court held that

amendment unconstitutional in *Siegel v. Fitzgerald*, 142 S. Ct. 1770 (2022).[1]  Defendants, the

U.S. Trustee for Region 3, the Acting Director of the U.S. Trustee Program, and the U.S. Trustee

Program ("**Defendants**") moved to dismiss for failure to state a claim pursuant to Federal Rule

---

[1] Adv. D.I. 1 (Complaint).

of Civil Procedure 12(b)(6) (the "**Motion**").[2]   The parties submitted briefing and oral argument

was held on April 27, 2023.[3]   For the reasons set forth below, the Motion is denied.

## JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28

U.S.C. § 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. § 1409(a).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6), made applicable here by Rule 7012(b) of the

Federal Rules of Bankruptcy Procedure, authorizes a party to move for dismissal for "failure to

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The purpose of a

motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide

the merits of the case.  *In re Centaur, LLC*, No. 10-10799 (KJC), 2013 WL 4479074, at *2 (Bankr.

D. Del. Aug. 19, 2013).  The Court must assume the truth of the plaintiff's factual allegations

and may only dismiss a complaint that does not contain "enough facts to state a claim to relief

that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007).

This determination is "a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## BACKGROUND

A.    **Debtors' Chapter 11 Cases and Confirmed Plan**

On May 10, 2018 (the "**Petition Date**"), the Debtors each commenced a case by

filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.  On

---

[2] Adv. D.I. 7; See also D.I. 8 (Opening Brief in Support of Motion to Dismiss).
[3] Adv. D.I. 14 (Opposition Brief); Adv. D.I. 15 (Reply Brief).

July 31, 2018, this Court entered the Confirmation Order and on August 15, 2019 (the "**Effective Date**"), the Trust was established. [4]

The Confirmation Order requires that the "[Liquidating] Trustee shall pay, from and after the Effective Date, statutory fees due to the U.S. Trustee in accordance with 28 U.S.C. § 1930 until the closing the Chapter 11 Cases."[5]

**B.      U.S. Trustee Quarterly Fee Schedule**

The UST is a division of the U.S. Department of Justice responsible for overseeing the administration of bankruptcy cases in 88 of the 94 judicial districts of the United States (the "**UST Districts**").  In the remaining six judicial districts, located in Alabama and North Carolina (the "**BA Districts**"), bankruptcy cases are overseen by the Bankruptcy Administrator Program (the "**BA Program**"), which is part of the judicial branch and is overseen by the Administrative Office of the United States Courts. The Administrative Office of the United States Courts is supervised by the Judicial Conference of the United States (the "**Judicial Conference**").

In the UST Districts, chapter 11 debtors are required to pay quarterly fees ("**Quarterly Fees**") to the UST in accordance with 28 U.S.C. § 1930, which provides that, among other fees, a "quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first." 28 U.S.C. § 1930(a)(6)(A).  The Quarterly Fees are based on the total "disbursements" made by the applicable debtor in each quarter.  *Id.*

---

[4] D.I. 1167 (Confirmation Order).
[5] *Id.* ¶ Z.

Initially, the BA Program did not collect Quarterly Fees in chapter 11 cases.  In 1994, the

Ninth Circuit found this disparate treatment of debtors to be unconstitutional.  *St. Angelo v.*

*Victoria Farms, Inc.*, 38 F.3d 1525, 1532-33 (9th Cir. 1994), *amended by* 46 F.3d 969 (1995)).  In

response to this decision, Congress amended § 1930, to allow for corresponding Quarterly Fees

in BA Districts, stating in relevant part:

> In districts that are not part of a United States trustee region . . . the Judicial
> Conference of the United States *may* require the debtor in a case under chapter 11
> of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection.

28 U.S.C. § 1930(a)(7) (2000) (emphasis added).

Following the addition of subsection (7) to the statute, the Judicial Conference

harmonized Quarterly Fees among districts by entering a standing order directing the BA

Districts to charge Quarterly Fees equal to those in UST Districts.  Judicial Conference of the

U.S., *Report of the Proceedings of the Judicial Conference of the United States* 46 (Sept./Oct.

2001), *available at* https://www.uscourts.gov/sites/default/files/2001-09_0.pdf ("**2001 Standing**

**Order**") (directing that Quarterly Fees be imposed in BA Districts "in the amounts specified in

28 U.S.C. § 1930.").  Thereafter, Quarterly Fees remained consistent between the BA Districts

and UST Districts for the next 17 years.

This changed, however, in 2017, when Congress amended § 1930(a)(6) to increase the

Quarterly Fees payable in pending chapter 11 cases in UST districts, beginning in the first

quarter of 2018.  See 28 U.S.C. § 1930(a)(6)(B) (2017) (the "**2017 Amendment**") ("During each

of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of

September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee

payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1

percent of such disbursements or $250,000.").  While the UST Districts implemented the fee

increase mandated by the 2017 Amendment immediately, the BA Districts did not.

Despite the 2001 Standing Order, the BA Districts did not raise their fees to match the

increased amounts assessed in the UST Districts until September of 2018.  *See Report of the*

*Proceedings of the Judicial Conference of the United States* 11-12 (Sept. 13, 2018) *available at*

https://www.uscourts.gov/sites/default/files/2018-09_proceedings.pdf.  "Even then, the Judicial

Conference instructed that the fee increase would not take effect until October 1, 2018, and

would apply only to cases filed after that date."  *Clinton Nurseries, Inc. v. Harrington (In re*

*Clinton Nurseries, Inc.)*, 53 F.4th 15, 20 (2d Cir. 2022).  Accordingly, debtors in BA Districts

who filed for bankruptcy prior to October 1, 2018, would never be charged the fee increase,

regardless of how long their cases remained pending.  *Id.*  "By contrast, all qualifying Chapter 11

debtors in UST Districts were assessed the increased fees—even debtors in cases commenced

before the 2017 Amendment was enacted." *Id.* (internal quotations omitted).

 In 2020, Congress amended Section 1930 to replace the word "may" with the word

"shall."  With that revision, the statute now provides that "the Judicial Conference of the United

States *shall* require the debtor in a case under chapter 11 of title 11 to pay fees equal to those

imposed by paragraph (6) of this subsection." 28 U.S.C. § 1930(a)(7) (emphasis added).

## C.  Application of the Revised Fee Schedule to this Case

In accordance with the 2017 Amendment's increased fee requirement, the Debtors and

Liquidating Trustee collectively allegedly paid an increase of $1,239,526.47 in Quarterly Fees

(the "**Excess Fees**") as compared to the fees required under the pre-2017Amendment schedule.

**D.    *Siegal v. Fitzgerald***

On June 6, 2022, the Supreme Court held that the 2017 Amendment was unconstitutional because it violated the uniformity requirement of the Bankruptcy Clause of the Constitution. *See Siegel v. Fitzgerald*, 142 S. Ct. 1770, 1782-83 (2022) ("[T]he uniformity requirement of the Bankruptcy Clause prohibits Congress from arbitrarily burdening only one set of debtors with a more onerous funding mechanism than that which applies to debtors in other States."); *see also* U.S. Const., Art. 1, § 8, cl. 4 (empowering Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States"). It did not, however, determine the remedy. *Siegel*, 142 S. Ct. at 1783 (remanding the case to determine the appropriate remedy).

All the courts that have considered the question of remedies due to trustees post-*Siegel* have determined that a refund is the appropriate remedy. *See Clinton Nurseries, Inc. v. Harrington*, 53 F.4th 15, 29 (2d Cir. 2022) (reversing judgment of the bankruptcy court and directing the bankruptcy court to provide debtors with a refund of the amount of quarterly fees paid in excess of the amount they would have paid in BA District during the same time periods); *John Q. Hammons Fall 2006, LLC v. Office of the U.S. Trustee (In re John Q. Hammons Fall 2006)*, 15 F.4th 1011, 1026 (10th Cir. 2021), *rev'd*, *Off. of the United States Tr. v. John Q. Hammons Fall 2006, LLC*, 213 L. Ed. 2d 1036, 142 S. Ct. 2810 (2022), *reinstated*, *In re John Q. Hammons Fall 2006, LLC*, No. 20-3203, 2022 WL 3354682, at *1 (10th Cir. Aug. 15, 2022) (reversing lower court, holding the 2017 Amendment unconstitutional, and directing the bankruptcy court to order a refund of the excess fees paid during the relevant periods); *Siegel v. United States Tr. Program (In re Circuit City Stores, Inc.)*, Nos. 08-35653-KRH, 19-03091-

KRH, 2022 Bankr. LEXIS 3544, at *14 (Bankr. E.D. Va. Dec. 15, 2022) (“***Circuit City***”)[6]

(“[W]ith great deference to the two courts of appeal that have already ruled post-*Siegel*, this

Court holds that the Trustee is entitled to relief. The Court therefore grants the only relief it has

the power to provide — a refund.”).

## ANALYSIS

### I.    Is Prospective Relief a Sufficient Remedy?

Defendants seek to have this case dismissed on the grounds that the remedy Plaintiff

seeks – a refund of the Excess Fees -- is not available as a matter of law.  Specifically,

Defendants argue that a retrospective decrease in fees is not the appropriate remedy for the lack

of uniformity created by the 2017 Amendment.  Rather, Defendants submit, prospective relief

alone is the appropriate remedy for systemic equal-treatment violations and since that relief has

already been granted by Congress’ modification of the offending statute, Plaintiff states no

claim.  I disagree.

As the *Circuit City* Court recently observed, “[p]rospective relief alone provides no relief.

Prospective relief, by itself, would serve instead to cement the unconstitutional treatment.”

*Circuit City*, 2022 Bankr. LEXIS 3544, at *9.  The Defendants here would have me conclude

that it is a sufficient remedy that the violation has been fixed on a go forward basis, but they fail

to explain how that affords any relief to the Trustee currently before me.  It is no remedy for this

Trustee’s injury that future trustees will not be similarly harmed.

---

[6] As both the opinions issued in the Circuit City case share the same caption, for ease of reference I will
refer to the Supreme Court opinion as “*Siegel*” and the Bankruptcy Court opinion as “*Circuit City*.”

While the Defendants cite Supreme Court precedent in support of their position that plaintiffs who succeed in establishing a constitutional equal-treatment violation are only entitled to a prospective remedy, I am not persuaded.

Defendants rely primarily on *Sessions v. Morales-Santa*, 582 U.S. 47 (2017) and *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335 (2020) (plurality opinion), but neither of these cases involved monetary injuries that could be easily remedied with retrospective monetary relief. In *Sessions*, plaintiff challenged the constitutionality of a law that permitted children of unwed mothers to be eligible for citizenship earlier than those born to unwed fathers and married persons. *Sessions*, 582 U.S. at 51-52. The Court found the law violated the Equal Protection Clause but declined to extend the benefit reserved for unwed mothers to unwed fathers as plaintiff sought because doing so would turn the statute on its head. *Id.* at 75 (observing that with plaintiff's proposed remedy came "potential for 'disruption of the statutory scheme'" and explaining that extension of the benefit to those excluded "would render the special treatment Congress prescribed in §1409(c), the one-year physical-presence requirement for U.S.-citizen mothers, the general rule, no longer an exception."). These issues are not present here.

Likewise, in *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335 (2020), plaintiffs challenged the constitutionality of an exception to a statute that allowed the government to make robocalls when such calls were prohibited when made by others. Again, no monetary injury was sustained, and no monetary remedy was pursued. Instead, the Plaintiffs sought to disable the entire statute so they would be permitted to make political robocalls to cell phones. The Court declined to invalidate the statute, instead severing only the unconstitutional exception, meaning that although Plaintiffs did not get to make the robocalls they wanted to, neither did the government. While Defendants argue that the conclusion to be reached from this result is that

prospective relief is the only appropriate relief, they ignore the *Barr* Court's explanation as to why more was not necessary in that case.  In responding to a dissenting opinion, the Court explained:

> Justice Gorsuch suggests that our decision provides "no relief" to plaintiffs.  We disagree. Plaintiffs want to be able to make political robocalls to cell phones, and they have not received *that* relief. But the First Amendment complaint at the heart of their suit was unequal treatment. Invalidating and severing the government-debt exception fully addresses that First Amendment injury.

*Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2355 (2020) (emphasis in original) (internal citations omitted).  The same cannot be said here.  The injury sustained by the Plaintiff is not simply unequal treatment, it is also that he was compelled to make payments that others were not required to make.  While eliminating the unconstitutional language here provides partial relief, it does not put the money back in the Trustee's pocket and therefore does not "fully address" the injury in the same manner as the prospective remedy in the *Barr* case.

The Defendants also rely on the Ninth Circuit's opinion in *St. Angelo v. Victoria Farms, Inc.*, where the Court held that the lack of uniformity in a predecessor quarterly fee statute could be remedied by severing the unconstitutional provision from the statute.  38 F.3d 1525 (9th Cir. 1994), *amended by* 46 F.3d 969 (9th Cir. 1995).  But in *Victoria Farms*, unlike here, the increased or "excess" payment had not yet been made.  Accordingly, the question of whether a refund was permissible was not before the court. [7]

---

[7] While Defendants also cite to *Orr v. Orr*, 440 U.S. 268 (1979), I fail to see its relevance on this issue. In *Orr*, the Court struck down as unconstitutional Alabama's alimony statutes, pursuant to which husbands, but not wives, could be required to pay alimony.  It then remanded the case to the state court to "consider whether [plaintiff's] stipulated agreement to pay alimony, or other grounds of gender-neutral state law, bind him to continue his alimony payments."  *Id.* at 283-84.  Remedies were not discussed.

II.     **What Type of Retrospective Relief is Appropriate?**

Defendants argue that if retrospective relief is required, it should come in the form of collecting additional fees from the BA Districts, not refunding overpayments made in the UST Districts.  Defendants reason that a process already exists for collecting those fees, as BAs routinely refer unpaid fees to the Treasury Department for collection.  Further, they argue, even if the collection effort is not "perfectly successful," "a good-faith effort to administer and enforce" a retroactive collection from those who made lower payments can "constitute adequate relief" for differential treatment.[8]    Again, I disagree.

Defendants' proposed remedy presents several problems that the alternative does not.  As the *Circuit City* Court explained:

> Numerous legal and practical hurdles stand in the way of imposing a retroactive assessment of debtors in BA Districts. A refund of the Unconstitutional Overpayment appears to be the more practical remedy.  An injured party should not be forced to wait for officials to act when it is uncertain how or when they would do so. This Court lacks jurisdiction to command the BA Districts to retroactively assess fees, and the Court is unaware of any action on the part of the Defendants who are authorized to participate in BA Districts to move for the imposition of such retroactive fees.

*Circuit City*, 2022 Bankr. LEXIS 3544, at *10-11 (internal citations omitted).  *See also McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 35 (1990) ("[I]t is unnecessary to say more than that it nowhere appears that these [taxing] officers, if they possess the power [to assess back taxes], have undertaken to exercise it or that they have any intention of ever doing so.") (alterations in original) (quoting *Mont. Nat'l Bank of Billings v. Yellowstone Cnty.*, 276 U.S. 499, 505 (1928)).  "The Trustee should not remain injured simply because the

---

[8] Opening Brief at 17.

Defendants may one day seek to force BA Districts to retroactively impose greater fees." *Circuit City*, 2022 Bankr. LEXIS 3544, at *11.

Although the Defendants argue that evidence of congressional intent dictates a different result, I find this argument unpersuasive and agree with Judge Huennekens' observation that "congressional intent provides little guidance here." *Circuit City*, 2022 Bankr. LEXIS 3544, at *13-14 (discussing the same and concluding that "[c]ongressional intent is, at best, a wash.").

There is ample precedent, however, for ordering a refund for unconstitutional overpayments to a governmental entity. *See McKesson Corp.*, 496 U.S. at 32-36 (collecting cases). In *McKesson*, a Florida statute imposed higher liquor excise taxes on parties not located in Florida and was determined to be an unconstitutional violation of the Commerce Clause. *Id.* at 22. The Florida Supreme Court limited the remedy to nullifying the discriminatory statute on a prospective basis and denied the petitioner's request for a refund of the excess taxes. *Id.* at 25. The Supreme Court reversed, explaining that while the Florida Supreme Court "acted correctly in awarding petitioner declaratory and injunctive relief against continued enforcement of the discriminatory provisions[,]" this was not enough.

> The question before us is whether prospective relief, by itself, exhausts the requirements of federal law. The answer is no: if a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.

*McKesson Corp.*, 496 U.S. at 31. Defendants contend *McKesson* is not applicable here because Plaintiff cannot establish that it paid the Quarterly Fees under duress. Again, I disagree.

As in *McKesson*, Plaintiff and the Debtors in the present case had no pre-deprivation safeguards against serious disadvantage if they had refused to pay the Excess Fees imposed under the 2017 Amendment. Given the nature of a bankruptcy Trustee's fiduciary

duties and the complexity of the cases filed under chapter 11, it is simply not reasonable to

expect a trustee to risk the very assets he or she is charged with protecting and maximizing to

assert a constitutional challenge to a statute.  As the *Circuit City* Court explained,

> [t]he Trustee is a fiduciary to the debtors' bankruptcy estates and must act in their
> best interest. The Bankruptcy Code provides that a court "shall" convert the case
> to Chapter 7 or dismiss the case altogether for failure to pay the Quarterly U.S.
> Trustee Fees. 11 U.S.C. § 1112(b)(1), (b)(4)(K). Had the Trustee refused to pay
> the Unconstitutional Overpayment, the Trustee would have run the risk of
> dismissal or conversion — either of which would have jeopardized over a decade
> of carefully negotiated restructuring and repayments to creditors. As such, the
> Trustee did not have a meaningful pre-deprivation opportunity to challenge the
> constitutionality the Unconstitutional Overpayment.

*Circuit City*, 2022 Bankr. LEXIS 3544, at *15.  *See also Atchison, T. & S.F. Ry. Co. v. O'Connor*,

223 U.S. 280, 286 (1912) ("[T]he plaintiff could have had no certainty of ultimate success, and

we are of opinion that it was not called upon to take the risk of having its contracts disputed and

its business injured, and of finding the tax more or less nearly doubled in case it finally had to

pay.").

### III.     What Period of Time Must the Refund Cover?

Defendants argue that if Plaintiffs are entitled to a refund, that refund should not include

amounts paid during the first three quarters of 2018, when the BAs violated the still mandatory

2001 Standing Order by not collecting equal fees.  Accordingly, they argue, because there was no

disparity in the fees actually imposed during that time, there is no need to refund the fees paid for

that period.  Again, I agree with Judge Huennekens' analysis of this issue.  As he explained:

> [T]he crux of the issue is not what the BA Districts did. It is what Congress did.
> Congress passed a statute that allowed for non-uniform fees. That unconstitutional
> statute — not the actions of the Judicial Conference — is what the Supreme Court
> identified as the source of the constitutional injury. *Siegel*, 142 S. Ct. at 1782 n.2
> (rejecting the argument that "that any uniformity violation should be attributed to
> the Judicial Conference and not to Congress" because "the fee statute did not
> require the Judicial Conference to impose an equivalent increase" and "[i]t is that
> congressional decision that led to the disparities at issue here."). Any non-uniform

fees paid as a result of that statute are a constitutional injury suffered by the Trustee. This is just as true for the overpayments in the first three quarters of 2018 as it is for the remainder of the overpayments.

*Circuit City*, 2022 Bankr. LEXIS 3544, at *16.

For all these reasons, and consistent with the rulings of the courts that have considered the issue thus far, a refund is the appropriate relief.  Defendants' Motion to Dismiss is denied.

SO ORDERED.

Dated:  May 18, 2023

JOHN T. DORSEY, U.S.B.J.